DYKEMA GOSSETT LLP
John M. Thomas (266842)
jthomas@dykema.com
Tamara A. Bush (197153)
tbush@dykema.com
Krista L. Lenart (*Pro Hac Vice*)
klenart@dykema.com
David M. George (*Pro Hac Vice*)
dgeorge@dykema.com
Janet L. Conigliaro (*Pro Hac Vice*)
jconigliaro@dykema.com
333 South Grand Avenue, Suite 2100
Los Angeles, CA 90071
Telephone: (213) 457-1800
Facsimile: (213) 457-1850

Attorneys for Defendant
FORD MOTOR COMPANY

DYKEMA GOSSETT LLP
2723 SOUTH STATE STREET
SUITE 400
ANN ARBOR, MI 48104

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

### WESTERN DIVISION

| | |
|---|---|
| ADAM RASICO, individually and on behalf of other members of the general public similarly situated individuals,<br><br>Plaintiffs,<br><br>vs.<br><br>FORD MOTOR COMPANY, a Delaware corporation, and DOES 1-10, inclusive,<br><br>Defendants. | Case No. _2:12-CV-09026-ABC-JCG(x)<br><br>Honorable Judge Audrey B. Collins<br>Magistrate Judge Jay C. Gandhi<br><br>**FORD MOTOR COMPANY'S RESPONSE TO FIRST AMENDED CLASS ACTION COMPLAINT AND JURY DEMAND**<br><br>Class Action Complaint filed: 8-31-2012<br>1st Amended Complaint filed: 3-4-2013 |

## INTRODUCTION

1. Plaintiffs bring this action individually and on behalf all persons in the United States who purchased or leased, not for resale, any 2005 through 2007 Ford Freestyle or 2005 through 2007 Mercury Montego vehicles equipped with a continuously variable transmission ("CVT" or "CVT Transmission") (collectively, "Class Vehicles") manufactured, distributed, and sold by Ford Motor Company.

DYKEMA GOSSETT LLP
2723 SOUTH STATE STREET
SUITE 400
ANN ARBOR, MI 48104

1  **Response:**   Ford admits that Plaintiffs bring this action making the allegations

2  described in this paragraph, but denies that the allegations have merit.  Ford further

3  admits that it designed and manufactured new 2005-2007 Ford Freestyle and 2005-

4  2007 Mercury Montego vehicles, including vehicles equipped with the CVT

5  Transmission.  Ford denies the remaining allegations in this paragraph.

6       2.       On information and belief, beginning in 2005, if not before, and prior to

7  Plaintiffs' purchase of their class vehicles,  Defendant knew or should have known

8  that the Class Vehicles and their CVT Transmission contain one or more design and

9  manufacturing defects causes them to prematurely breakdown and suffer mechanical

10  failure ("the CVT Defect" or "CVT Transmission Defect").

11  **Response:**   Ford denies the allegations in this paragraph.

12       3.       A continuously variable transmission is a type of automatic transmission

13  that allegedly provides more useable power, better fuel economy and a smoother

14  driving experience than a traditional automatic transmission. Unlike traditional

15  transmissions with a gearset, a continuously variable transmission uses a system of

16  pulleys with a metal belt or chain running between them which enables the engine to

17  run at its most efficient revolutions per minute (RPM) for a range of vehicle speeds.

18  **Response:**   Ford admits that the allegations in this paragraph.

19       4.       When premature breakdown and mechanical failure occurs, the affected

20  Class Vehicles are no longer safe to operate and require repairs costing thousands of

21  dollars. Furthermore, due to the nature of the CVT Transmission Defect, consumers

22  have frequently experienced and will continue to experience

23  **Response:**   Ford denies the allegations in this paragraph.

24       5.       These conditions present a safety hazard due to the sudden and

25  unexpected transmission failure that Class Vehicles can experience while in

26  operation. The Class Vehicles and their CVT Transmissions can fail, suddenly and

27  unexpectedly, at any time and under any driving condition or speed. Further, sudden

28  loss of forward propulsion and delayed acceleration can have serious effects on

1 handling, stability, acceleration, and maintenance of speed. These conditions and
2 risks can thereby contribute to traffic accidents, which can result in personal injury or
3 death.

4       **Response:**   Ford denies the allegations in this paragraph.

5       6.     Since 2005, if not before, Ford has known that the CVT Transmissions
6 were defectively designed, assembled, and manufactured. Rather than alerting Class
7 Members of this safety hazard and offering to repair the Class Vehicles, Ford has
8 concealed this problem from its customers at the time of purchase or lease and
9 thereafter.

10       **Response:**   Ford denies the existence of "Class Members" because no class
11 has been certified and the putative class members are not parties to this litigation.
12 Ford incorporates the preceding sentence by reference to all paragraphs that include
13 allegations regarding "Class Members." Answering further, Ford denies the
14 allegations in this paragraph and denies that the CVT in the Subject Vehicles is
15 defective.

16       7.     Because Ford will not notify Class Members that the CVT Transmission
17 is defective, Plaintiffs and Class Members (as well as members of the general public)
18 are subjected to dangerous driving conditions that often occur without warning. As a
19 result of the CVT Transmission Defect, Ford, through its dealers, has also profited by
20 selling replacement parts to Class Members.

21       **Response:**   Ford denies the existence of "Class Members" because no class
22 has been certified and the putative class members are not parties to this litigation.
23 Answering further, Ford denies the allegations in this paragraph and denies that it has
24 any obligation to provide notice that the CVT is defective because the CVT is not
25 defective.

26       8.     The Freestyle comes equipped with the CVT Transmission.[1] Had
27 Plaintiffs and the other Class Members at the time of purchase or lease known about

28

[1] The CVT Transmission is an option on the Mercury Montego.

DYKEMA GOSSETT LLP
2723 SOUTH STATE STREET
SUITE 400
ANN ARBOR, MI 48104

1   the defects contained in the Class Vehicles and their CVT Transmissions, the
2   associated monetary repair costs and/or safety hazards, they would not have
3   purchased the said vehicles, or would have paid less for them.

4   **Response:**  Ford admits that the 2005-2007 Ford Freestyle comes equipped
5   with CVT Transmission and that CVT is an option in the 2005-2007 Mercury
6   Montego vehicles. Ford is without knowledge or information sufficient to form a
7   belief as to the truth of the remaining allegations in this paragraph and therefore
8   denies the allegations.

9        9.    Plaintiffs are informed and believe and based thereon allege that as the
10  number of consumer complaints about the CVT Transmission Defect increased,
11  Defendant issued one or more technical service bulletins ("TSB") to only its dealers
12  acknowledging the CVT Transmission Defect for Class Vehicles and implemented
13  one or more fixes that failed to repair the problem.

14  **Response:**  Ford denies the existence of an alleged "CVT Transmission
15  Defect." Ford admits only that it published a technical service relating to the CVT
16  installed in the 2005-2007 Ford Freestyle and 2005-2007 Mercury Montego vehicles
17  and denies that such TSB acknowledged any defect.  To the extent the allegations in
18  this paragraph are inconsistent with the alleged TSB, Ford denies the allegations.  To
19  the extent a further response is required, Ford denies the remaining allegations in this
20  paragraph.

21      10.    Plaintiffs are informed and believe and based thereon allege that despite
22  notice of the defect from numerous consumer complaints and dealership repair
23  orders, Defendant has not recalled the Class Vehicles to repair the defect, has not
24  offered its customers a suitable repair or replacement free of charge, and has not
25  offered to reimburse the Class Vehicles' owners and leaseholders the costs they
26  incurred relating to diagnosing and repairing the CVT Transmission Defect and the
27  related damage that it causes.

28

DYKEMA GOSSETT LLP
2723 SOUTH STATE STREET
SUITE 400
ANN ARBOR, MI 48104

DYKEMA GOSSETT LLP
2723 SOUTH STATE STREET
SUITE 400
ANN ARBOR, MI 48104

1   **Response:**  Ford admits only that it has not recalled the Subject Vehicles
2   because a recall is not warranted.  Ford denies the remaining allegations in this
3   paragraph.

4        11.   Plaintiffs are informed and believe and based thereon allege that Ford
5   knew about and concealed the CVT Transmission Defect that is contained in every
6   Class Vehicle, along with the attendant dangerous safety problems and associated
7   repair costs, from Plaintiffs and Class Members both at the time of sale or lease and
8   thereafter. Had Plaintiffs and the Class Members known about this defect at the time
9   of sale or lease, Plaintiffs and the Class Members would not have purchased the Class
10  Vehicles or would have paid less for them. As a result of their reliance on Defendant's
11  omissions and/or misrepresentation, owners and/or lessees of the Class Vehicles have
12  suffered ascertainable loss of money, property, and/or loss in value of their Class
13  Vehicles.

14       **Response:**  Ford denies the existence of any alleged "CVT Transmission
15  Defect" and denies the remaining allegations in this paragraph.

16       12.   Additionally, as a result of the CVT Transmission Defect contained in
17  the Class Vehicles, Plaintiffs and the Class Members have been harmed and have
18  suffered actual damages in that the Class Vehicles and their CVT Transmissions have
19  failed or are substantially certain to fail during their expected useful life.

20       **Response:**  Ford denies the existence of "Class Members" because no class
21  has been certified and the putative class members are not parties to this litigation.
22  Ford further denies the remaining allegations in this paragraph.

23                              **JURISDICTION**

24       13.   This is a class action.

25       **Response:**  Ford admits that Plaintiff purports to bring this action on behalf of
26  a proposed class, but denies that certification of any class or sub-class is appropriate.

27       14.   Members of the Proposed Class are citizens of states different from the
28  home state of Defendants.

**Response:** Ford is without knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph and therefore denies the allegations.

15.   On information and belief, aggregate claims of individual Class Members exceed $5,000,000.00, exclusive of interest and costs.

**Response:** Ford admits that Plaintiff contends that the aggregate claims of individual class members exceed $5 million in value, but denies that the claims have any merit.

16.   Jurisdiction is proper in this Court pursuant to 28 U.S.C. § 1332(d).

**Response:** Ford admits that this Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332(d).

## VENUE

17.   Venue is proper in in this district pursuant to 28 U.S.C. § 1391(a). Ford, through its business of distributing, selling, and leasing the Class Vehicles, has established sufficient contacts in this district such that personal jurisdiction is appropriate, and Ford is deemed to reside in this district pursuant to 28 U.S.C. § 1391(a).

**Response:** Ford admits only that venue is proper in this district. Ford denies the remaining allegations of this paragraph.

## THE PARTIES

**Plaintiff Adam Rasico**

18.   Plaintiff Adam Rasico is a California citizen who resides in Tulare, California. In 2007, Mr. Rasico purchased a used 2005 Ford Freestyle from an authorized Ford dealer in California. At the time of purchase, Mr. Rasico's vehicle had approximately 18,000 miles on the odometer.

**Response:** Ford is without knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph and therefore denies the allegations.

DYKEMA GOSSETT LLP
2723 SOUTH STATE STREET
SUITE 400
ANN ARBOR, MI 48104

FORD MOTOR COMPANY'S RESPONSE TO FIRST AMENDED CLASS ACTION COMPLAINT
CASE NO. 2:12-CV-09026-ABC (JCGx)

DYKEMA GOSSETT LLP
2723 SOUTH STATE STREET
SUITE 400
ANN ARBOR, MI 48104

19.    Mr. Rasico purchased his vehicle primarily for his personal, family, or household purposes. The vehicle was manufactured, sold, distributed, advertised, marketed, and warranted by defendant.

**Response:**  Ford admits that it manufactured the 2005 Ford Freestyle and sold that vehicle to independent dealerships but denies that it sold Plaintiff Rasico's vehicle directly to him.  As to the remaining allegations in this paragraph, Ford is without knowledge or information sufficient to form a belief as to their truth and therefore denies the allegations.

20.    Before acquiring his vehicle, Mr. Rasico reviewed and relied on Defendant's website page for the Ford Freestyle.

**Response:**  Ford is without knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph and therefore denies the allegations.

21.    Only after Mr. Rasico purchased the vehicle did the CVT Transmission not function properly. In or around June 2011, with approximately 70,000 miles on the odometer, Mr. Rasico noticed a helicopter-like noise or whine coming from the engine compartment when the transmission was in park or neutral.

**Response:**  Ford is without knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph and therefore denies the allegations.

22.    Between June 2011 and March 2012, the noise became louder.

**Response:**  Ford is without knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph and therefore denies the allegations.

23.    On or around March 19, 2012, with approximately 79,400 miles on the odometer, Mr. Rasico took his vehicle to an authorized Ford dealer complaining, as recorded on his repair order, that the transmission was making "a loud growling noise in park or neutral." The dealer "verified noise coming internally from the [CVT] input

shaft & bearing." Mr. Rasico had to pay $94.00 out of pocket for the diagnosis. The dealer informed Mr. Rasico that the CVT would need to be opened and his input shaft and bearing would need to be replaced at a cost to Mr. Rasico of $2,356.04.

**Response:** Ford is without knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph and therefore denies the allegations.

24.   In or around May, 2012, Mr. Rasico returned to the dealer complaining that his vehicle had totally lost power while driving. The dealer confirmed Mr. Rasico's complaints and told Mr. Rasico that either his CVT would need to be replaced, at a cost of around $5,578, or the input shaft would need to be replaced, at a cost of around $2,356.04. However, the dealer informed Mr. Rasico that a substitute input shaft was not available.

**Response:** Ford is without knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph and therefore denies the allegations.

25.   In or around August 2012, the dealer was able to acquire a substitute input shaft for Mr. Rasico's CVT. As recorded in the repair order, the dealer "removed transmission and disassembled per customer authorization, found input shaft and rear bearings broken, shaft is worn and output shaft is worn." The dealer replaced Mr. Rasico's CVT's input shaft and bearing, sanded the rear shaft, and reassembled the CVT, adding new fluids. Mr. Rasico had to pay $2,042.62 out of pocket for this repair.

**Response:** Ford is without knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph and therefore denies the allegations.

26.   On or around Monday, August 13, 2012, Mr. Rasico had his vehicle towed back to the dealer, complaining that his transmission was failing to go into gear. The dealer verified Mr. Rasico's complaint and conducted a software update.

DYKEMA GOSSETT LLP
2723 SOUTH STATE STREET
SUITE 400
ANN ARBOR, MI 48104

1  Mr. Rasico opted to sell his car to the dealer to avoid incurring further costs and
2  breakdowns.

3  **Response:**  Ford is without knowledge or information sufficient to form a
4  belief as to the truth of the allegations in this paragraph and therefore denies the
5  allegations.

6  27.    At all times, Mr. Rasico, like all Class Members, has driven his vehicle
7  in a foreseeable manner and in the manner in which it was intended to be used.

8  **Response:**  Ford denies the existence of "Class Members" because no class
9  has been certified and the putative class members are not parties to this litigation.
10  Ford is without knowledge or information sufficient to form a belief as to the truth of
11  the remaining allegations in this paragraph and therefore denies the allegations.

12  **Plaintiff Eric Dias**

13  28.    Plaintiff Eric Dias is a California citizen who resides in San Bruno,
14  California. In or around 2005, Mr. Dias purchased a new 2006 Ford Freestyle from an
15  authorized Ford dealership in Redding, CA.

16  **Response:**  Ford is without knowledge or information sufficient to form a
17  belief as to the truth of the allegations in this paragraph and therefore denies the
18  allegations.

19  29.    Mr. Dias purchased his vehicle primarily for his personal, family, or
20  household purposes. The vehicle was manufactured, sold, distributed, advertised,
21  marketed, and warranted by Defendant.

22  **Response:**  Ford admits that it manufactured the 2005 Ford Freestyle and sold
23  that vehicle to independent dealerships but denies that it sold Plaintiff Dias' vehicle
24  directly to him.  As to the remaining allegations in this paragraph, Ford is without
25  knowledge or information sufficient to form a belief as to their truth and therefore
26  denies the allegations.

27  30.    Before acquiring his vehicle, Mr. Dias reviewed and relied on
28  Defendant's website page for the Ford Freestyle.

DYKEMA GOSSETT LLP
2723 SOUTH STATE STREET
SUITE 400
ANN ARBOR, MI 48104

1  **Response:**  Ford is without knowledge or information sufficient to form a
2  belief as to the truth of the allegations in this paragraph and therefore denies the
3  allegations.

4      31.    Only after Mr. Dias purchased the vehicle did the CVT Transmission not
5  function properly. In or around 2006, at approximately 30,000 miles, Mr. Dias
6  noticed the transmission failing to shift from park to drive and from park to reverse.
7  When attempting to shift out of park and pressing the accelerator, the RPMs would
8  shoot up, but the vehicle would fail to move, requiring the driver to release the
9  accelerator, allow the RPMs to fall, and try again in order to engage the transmission.

10  **Response:**  Ford is without knowledge or information sufficient to form a
11  belief as to the truth of the allegations in this paragraph and therefore denies the
12  allegations.

13      32.    In or around 2008, at approximately 50,000 miles, Mr. Dias noticed that,
14  when trying to accelerate, the RPMs would spike, but the vehicle would fail to speed
15  up and exhibit a sensation of slipping or failing to engage. Mr. Dias also noticed a
16  helicopter-like whine coming from the transmission.

17  **Response:**  Ford is without knowledge or information sufficient to form a
18  belief as to the truth of the allegations in this paragraph and therefore denies the
19  allegations.

20      33.    On or around July 2, 2010, at approximately 77,500 miles, Mr. Dias was
21  driving his Freestyle with his wife and children. While traveling on a busy highway,
22  Mr. Dias's vehicle suddenly lost all forward propulsion, and he had to coast uphill, at
23  risk of a rear end collision, before finding a suitable place to pull over.

24  **Response:**  Ford is without knowledge or information sufficient to form a
25  belief as to the truth of the allegations in this paragraph and therefore denies the
26  allegations.

27      34.    Later on July 2, 2010, Mr. Dias took his vehicle to Jones —West Ford,
28  an authorized Ford dealership in Reno, Nevada, complaining of a loss of power and

DYKEMA GOSSETT LLP
2723 SOUTH STATE STREET
SUITE 400
ANN ARBOR, MI 48104

1   appearance of the wrench and check engine lights. The dealer verified Mr. Dias's
2   concern, finding that the CVT had overheated, among other problems.

3   **Response:** Ford is without knowledge or information sufficient to form a
4   belief as to the truth of the allegations in this paragraph and therefore denies the
5   allegations.

6       35.   The dealer removed and installed a new transmission assembly at a cost
7   to Mr. Dias of $6,011.64. Mr. Dias was later able to recover $5,865.19 under his
8   extended warranty, leaving him with a net out of pocket cost of $146.45. Because the
9   dealer kept Mr. Dias's vehicle for approximately three weeks, Mr. Dias also had to
10  rent a car to transport himself and his family home from their vacation at an
11  approximate cost of $600.

12  **Response:** Ford is without knowledge or information sufficient to form a
13  belief as to the truth of the allegations in this paragraph and therefore denies the
14  allegations.

15      36.   In or around early 2012 at approximately 100,000 miles, Mr. Dias again
16  noticed a helicopter-like whine coming from the CVT.

17  **Response:** Ford is without knowledge or information sufficient to form a
18  belief as to the truth of the allegations in this paragraph and therefore denies the
19  allegations.

20      37.   At all times, Mr. Dias, like all Class Members, has driven his vehicle in
21  a foreseeable manner and in the manner in which it was intended to be used.

22  **Response:** Ford denies the existence of "Class Members" because no class
23  has been certified and the putative class members are not parties to this litigation.
24  Ford is without knowledge or information sufficient to form a belief as to the truth of
25  the remaining allegations in this paragraph and therefore denies the allegations.

26      38.   Defendant Ford Motor Company is a corporation organized and in
27  existence under the laws of the State of Delaware and registered with the California
28  Department of Corporations to conduct business in California. Ford Motor

DYKEMA GOSSETT LLP
2723 SOUTH STATE STREET
SUITE 400
ANN ARBOR, MI 48104

Company's Corporate Headquarters is located in Dearborn, Michigan. Ford Motor Company designs and manufactures motor vehicles, parts, and other products for sale in the United States and throughout the world. Ford Motor Company is the warrantor and distributor of the Class Vehicles in the United States.

**Response:** Ford admits that it is a Delaware corporation registered to conduct business in California with a principal place of business in Michigan, that it designs and manufactures motor vehicles and that the vehicles it manufactures are covered by a New Vehicle Limited Warranty. Ford denies that it manufactures each and every component part in each vehicle and denies the remaining allegations in this paragraph.

39.   At all times relevant herein, Defendant was and is engaged in the business of designing, manufacturing, constructing, assembling, marketing, distributing, and selling automobiles and other motor vehicles and motor vehicle components in California and throughout the United States of America.

**Response:** Ford admits that it designs and manufactures motor vehicles, although it denies that it designs and manufactures each and every component part in each vehicle.   Ford further admits that it distributes vehicles to independent dealerships and markets the vehicles it manufactures, but denies that it sold these vehicles directly to consumers.   Ford denies the remaining allegations in this paragraph.

## TOLLING OF STATUTES OF LIMITATION

40.   Because the defects in the design or manufacturer of the Class Vehicles and their CVTs cannot be detected until the defects manifests themselves, Plaintiffs and the Class Members were not reasonably able to discover the defects until after purchasing or leasing the Class Vehicles, despite their exercise of due diligence.

**Response:** Ford denies the allegations in this paragraph and specifically denies that the CVT in the Subject Vehicles is defective.

DYKEMA GOSSETT LLP
2723 SOUTH STATE STREET
SUITE 400
ANN ARBOR, MI 48104

DYKEMA GOSSETT LLP
2723 SOUTH STATE STREET
SUITE 400
ANN ARBOR, MI 48104

41.     Plaintiffs and the Class Members had no realistic ability to discern that the Class Vehicles and their CVTs were defective until they experienced the loss of forward propulsion, significant delays in acceleration, and noises coming from the CVT Transmission. Therefore, the discovery rule is applicable to the claims asserted by Plaintiffs and the Class Members.

**Response:**   This paragraph states a legal conclusion to which no response is required.   To the extent a response is required, Ford is without knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph and therefore denies the allegations.   Answering further, Ford denies that the CVT in the Subject Vehicles is defective.

42.     Plaintiffs are informed and believe and based thereon allege that Ford has known of the CVT Defect since at least 2005, if not earlier, and has concealed from or failed to alert owners and lessees of the Class Vehicles of the defective nature of their CVT Transmissions.

**Response:**   Ford denies the allegations in this paragraph.

43.     In addition, even after contacting Ford and/or its authorized agents for vehicle repairs concerning the defective nature of the Class Vehicles, Plaintiffs and Class Members were routinely told by Ford and/or through its authorized agents for vehicle repairs that the Class Vehicles are not defective[2] and that the symptoms could not be duplicated by Ford's authorized agents for vehicle repairs.

---

[2] Complaint to NHTSA: I BOUGHT MY 2005 FORD FREESTYLE IN JUNE 2010, VERY NICE CAR. A FEW WEEK INTO DRIVING I HEARD A VERY STRANGE NOISE SO I TOOK IT BACK TO THE DEALSHIP TO CHECK, THE TOLD ME THE NOISE IS NORMAL IT IS COMMING FROM THE TRANSMISSION AND THAT SOUND GOES WITH THAT TYPE OF TRANNY(CVT). AUGUST OF 2010 DTIVING ON I95 GOT A POPPING SOUND AND CAR STOP,I TOW IT BACK TO DEALSHIP AND THE TRANSMISSION WENT, (Accessed online, July 25, 2012, available at http://www-odi.nhtsa.dot.govicomplaints/)

1  **Response:**  Ford is without knowledge or information sufficient to form a

2  belief as to the truth of the allegations in this paragraph and therefore denies the

3  allegations.  Ford's response applies to the footnote contained in this paragraph.

4      44.     Any applicable statute of limitation has therefore been tolled by Ford's

5  knowledge, active concealment, and denial of the facts alleged herein. Ford is further

6  estopped from relying on any statute of limitation because of its concealment of the

7  defective nature of the Class Vehicles and their CVT Transmissions.

8      **Response:**  This paragraph states a legal conclusion to which no response is

9  required.  To the extent a response is required, Ford denies the allegations in this

10  paragraph.

11                              **FACTUAL ALLEGATIONS**

12      45.     For years, Defendant has designed, manufactured, distributed, sold, and

13  leased the Class Vehicles. Defendant has sold, directly or indirectly, through dealers

14  and other retail outlets, thousands of Class Vehicles equipped with the CVT

15  Transmission in California and Nationwide.

16      **Response:**  Ford admits that it designed and manufactured the 2005-2007

17  Ford Freestyle and 2005-2007 Mercury Montego vehicles, but Ford denies that it

18  "distributed, sold, and leased" these vehicles to the purported Class Members.

19  Answering futher, Ford states that it sells vehicles to independent dealerships and

20  does not sell vehicles directly to consumers.

21      46.     This lawsuit concerns certain Class Vehicles that are equipped with a

22  factory-installed CVT Transmission.

23      **Response:**  Ford admits that Plaintiffs' lawsuit purports to concern the 2005-

24  2007 Ford Freestyle and 2005-2007 Mercury Montego vehicles equipped with the

25  CVT Transmission.

26      47.     Conventional automatic transmissions have a finite number of gears,

27  usually between three and six. The appropriate gear is automatically selected by the

28

DYKEMA GOSSETT LLP
2723 SOUTH STATE STREET
SUITE 400
ANN ARBOR, MI 48104

DYKEMA GOSSETT LLP
2723 SOUTH STATE STREET
SUITE 400
ANN ARBOR, MI 48104

1  vehicle based on several factors, including vehicle speed, engine revolutions per
2  minute, incline/decline of the vehicle, and vehicle throttle.

3      **Response:**  Ford admits the allegations in this paragraph.

4      48.   By contrast, a continuously variable transmission uses two pulleys and a
5  chain that connects the pulleys to each other. The pulleys automatically adjust
6  themselves to different circumferences by increasing or decreasing the circumference
7  of one pulley, and simultaneously decreasing or increasing, respectfully, the
8  circumference of the other pulley. The concept behind operation of the CVT
9  transmission is that the transmission never disengages in order to change the
10  transmission's gear ratio, and that the transmission is capable of adjusting to a very
11  broad number of gear ratios in order to find a suitable ratio for the particular driving
12  circumstances.

13      **Response:**  Ford admits the allegations in this paragraph.

14      49.   In 2004, Ford brought Class Vehicles with the CVT Transmissions
15  installed to the market. Unfortunately, the CVT Transmission was plagued with
16  numerous defects. These defects resulted in functional failure, including but not
17  limited to loss of forward propulsion, significant delays in acceleration, loud noises
18  coming from the CVT Transmission, stalling, the inability to use reverse gear, and
19  total transmission failure while driving.

20      **Response:**  Ford admits only that it released the 2005 model year of the
21  Subject Vehicles in 2004. Ford denies the remaining allegations in this paragraph.

22      50.   Dating back to 2005, if not earlier, Ford was aware of the defects of the
23  CVT Transmission. Ford, however, failed and refused to disclose these known
24  defects to consumers. As a result of this failure, Plaintiffs and Class Members have
25  been damaged.

26      **Response:**  Ford denies the allegations in this paragraph.

27

28

**A.     The CVT Transmission Defect Poses An Unreasonable Safety Hazard**

51.     The Class Vehicles have habitually suffered the CVT Transmission Defect while in traffic, creating a very serious safety hazard. These failures often result in sudden loss of forward propulsion, significant delays in acceleration and total transmission failure.

**Response:**   Ford denies the allegations in this paragraph.

52.     Hundreds, if not thousands, of purchasers and lessees of the Class Vehicles have experienced problems with the CVT Transmission. Complaints filed by consumers with the National Highway Traffic Safety Administration ("NHTSA") and posted on the Internet demonstrate that the defect is widespread and dangerous, expensive to repair, and that it manifests without warning. The complaints also indicate Defendant's awareness of the problems with the CVT Transmission, the costs associated with the necessary repairs, and how potentially dangerous the defective condition is for consumers. The following are some safety complaints relating to CVT Transmission failure (spelling and grammar mistakes remain as found in the original) (Accessed online, July 24, 2012, available at http://www-odi.nhtsa.dot.gov/complaints/):

**NHTSA Complaints:**

(a)     VEHICLE TRANSMISSION FAILED WITHOUT WARNING WHILE DRIVING ON HIGHWAY ON MAY 10, 2011. VEHICLE WAS TOWED TO A LOCAL REPAIR SHOP. WAS TOLD THAT THIS PARTICULAR TRANSMISSION (CVT) HAS A HIGH FAILURE RATE, IS USUALLY NOT REPAIRABLE, AND IS VERY EXPENSIVE TO REPLACE (OVER $5,600). TRANSMISSION CAN ONLY BE REPLACED WITH THE SAME PROBLEMATIC TRANSMISSION WHICH WILL LIKELY FAIL AGAIN, AND IS ONLY AVAILABLE FROM

DYKEMA GOSSETT LLP
2723 SOUTH STATE STREET
SUITE 400
ANN ARBOR, MI 48104

FORD, AND EVEN REQUIRES SPECIAL TOOLS TO WORK ON IT. VEHICLE ONLY HAS 71K MILES ON IT AND IS PROPERLY MAINTAINED. CONTACTED FORD WHO REFUSED TO HELP, AND CONTACTED DEALERSHIP WHERE PURCHASED WHO REFUSED TO HELP. TRANSMISSION PROBLEM IS WELL DOCUMENTED ALL OVER THE INTERNET, YET THERE IS NO RECALL TO HELP CONSUMERS. FORD SHOULD NOT BE ALLOWED TO GET AWAY WITH STICKING AMERICAN FAMILIES WITH THIS DEFECTIVE AND POORLY MANUFACTURED PRODUCT. *TR

(b)   WHILE SITTING IDLE WAITING IN LINE AT A DRIVE THROUGH CHRISTMAS LIGHT DISPLAY, THE TRANSMISSION LIGHT CAME ON IN THE CAR. AFTER LIGHT CAME ON, COULD NOT DRIVE FASTER THAN 35 MPH. TOOK CAR TO PARKWAY FORD IN WINSTON SALEM WHERE IT WAS DIAGNOSED THAT ENTIRE CVT WAS RUINED AND NEEDED TO BE REPLACED. $5,700.00 FOR A REFURBISHED CVT. BASED ON THE NUMBER OF COMPLAINTS NOW ON THIS WEB SITE, SEEMS FORD NEEDS TO TAKE SOME ACTION AND RECALL AS I AM SURE THAT THERE ARE PLENTY OF AFFECTED OWNERS THAT AREN'T AWARE OF THIS PROCESS.

(c)   I BOUGHT MY 2005 FORD FREESTYLE IN JUNE 2010, VERY NICE CAR. A FEW WEEK INTO DRIVING I HEARD A VERY STRANGE NOISE SO I TOOK IT BACK TO THE DEALSHIP TO CHECK, THE TOLD ME THE

DYKEMA GOSSETT LLP
2723 SOUTH STATE STREET
SUITE 400
ANN ARBOR, MI 48104

DYKEMA GOSSETT LLP
2723 SOUTH STATE STREET
SUITE 400
ANN ARBOR, MI 48104

1  NOISE IS NORMAL IT IS COMMING FROM THE
2  TRANSMISSION AND THAT SOUND GOES WITH THAT
3  TYPE OF TRANNY(CVT). AUGUST OF 2010 DTIVING ON
4  195 GOT A POPPING SOUND AND CAR STOP,I TOW IT
5  BACK TO DEALSHIP AND THE TRANSMISSION WENT,
6  THE PUT A NEW TRANNY IN IT WAS COVERED BY MY
7  WARRANITY, JANUARY 2012 GOT THE SAME SOUND
8  AGAIN AND I WAS TOLD THAT THE TRANNY IS NOT
9  GOOD,SO I NEED A NEW ONE AGAIN IT IS COVERED.
10 SO U SEE FORD IS NOT TAKING RESPONABITLY FOR
11 THERE MISTAKE, PLEASE HELP ALL OF US THAT
12 HAVE 2005 FORD FREESTYLE PROBLEMS
13 (d)  MY VEHICLE HAS A CVT (CONTINUOUSLY VARIABLE
14 TRANSMISSION). THE "CHECK TRANSMISSION" LIGHT
15 COMES ON, CAR ONLY GOES ABOUT 30 MPH WITH
16 ENGINE AT 4,000 RPM. TURN CAR OFF AND BACK ON
17 AND THE PROBLEM IS GONE FOR A FEW MINUTES
18 BUT THEN RECURS. WHILE THIS PROBLEM IS
19 HAPPENING THE CAR IDLES AT 2,000 RPM (INSTEAD
20 OF 800). IF YOU TAKE YOU FOOT OFF THE BRAKE
21 WHILE SITTING STILL THE CAR WILL LUNGE
22 FORWARD UNEXPECTEDLY. THE FORD DEALERSHIP
23 (ALLAN VIGIL IN MORROW, GA) QUOTED $5,800 TO
24 REPLACE THE TRANSMISSION. THEY DID NOT TELL
25 ME THAT IT WOULD BE A REBUILT TRANSMISSION. IT
26 SEEMS THE CVT TRANSMISSION IS NO LONGER
27 MANUFACTURED AND FORD CAN ONLY REBUILD
28 THE TRANSMISSION. THERE SEEM TO BE MANY

DYKEMA GOSSETT LLP
2723 SOUTH STATE STREET
SUITE 400
ANN ARBOR, MI 48104

1  SIMILAR COMPLAINTS ABOUT THIS VEHICLE YET

2  FORD SAYS THEY ARE "VERY SURPRISED" AT THE

3  FAILURE. INTERESTINGLY, I DID NOT MENTION THE

4  "LUNGING" ISSUE TO THE SERVICE ADVISOR. BEFORE

5  MY CAR WAS MOVED FROM THE SERVICE LANE HE

6  NOTED LUNGING ON THE REPORT. IF THE PROBLEM

7  ISN'T WIDESPREAD HOW DID HE KNOW THAT?

8  BASICALLY, I HAVE A 6 YEAR OLD CAR THAT HAS

9  BEEN METICULOUSLY MAINTAINED BY THE

10  DEALERSHIP. AND A COMMON POINT OF FAILURE IS

11  NO LONGER MANUFACTURED AND I HAVE TO PAY

12  ALMOST $6000 TO HAVE THE CVT REBUILT. THE

13  FREQUENT CVT FAILURE AND THE LUNGING ISSUE IN

14  MY OPINION SHOULD BE RECALLED BY FORD.

15  (e)  MY 2006 FORD FREESTYLE IS ABSOLUTELY THE

16  WORST MADE CAR I HAVE EVER OWNED! THROTTLE

17  BODY PROBLEM... 50,000 MILES, CHECK! AC

18  COMPRESSOR GOES BAD.... 60,000 MILES, CHECK!

19  AND NOW BEGINNING AT 79,000 MILES THE CVT

20  TRANSMISSION IS TRASHED! $6000 TO FIX AND YOU

21  CAN'T EVEN GET A NEW ONE! I DROVE IT KNOWING

22  IT WOULD GO BAD ANOTHER 3000+ MILES BECAUSE I

23  WAS DESTINED TO SPEND A LOT OF MONEY EITHER

24  WAY. THE MECHANIC ACTUALLY SUGGESTED I

25  TRADE IT IN WHEN IT BEGAN. WOULD THAT HAVE

26  BEEN FAIR TO WHOMEVER BOUGHT IT? THESE ARE

27  ALL COMMON EARLY MILEAGE PROBLEMS WITH

28  THE FREESTYLES! THERE ARE NUMEROUS POSTS

DYKEMA GOSSETT LLP
2723 SOUTH STATE STREET
SUITE 400
ANN ARBOR, MI 48104

1   ABOUT OTHER OWNERS WITH THE SAME PROBLEMS,
2   ESPECIALLY THESE THREE AND THERE ARE A
3   COUPLE MORE THAT FORTUNATELY I HAVE DODGED
4   TO THIS POINT. WHAT IS FORD GOING TO DO? JUST
5   LET THOSE OF US WHO BOUGHT FREESTYLES WITH
6   CVT SUFFER. WHAT ABOUT THE FACT THAT YOU
7   STOPPED USING THE CVT TRANSMISSION ON THE
8   TAURUS X? WHY? I THINK WE KNOW BASED ON THE
9   NUMEROUS CVT FAILURES AT SUCH LOW MILEAGE.
10  BUT NOT LOW ENOUGH TO BE COVERED BY
11  WARRANTY.

12  (f)   I HAVE A 2006 FORD FREESTYLE THAT THE ENGINE
13        SURGES WITH OUT PRESSING THE GAS. ALSO, THE
14        AWD AND TC FUNCTION ISN'T WORKING AND WE
15        ARE ALSO GETTING INSTRUMENT PANEL WARNINGS
16        FOR NO SEAT BELT, AIR BAG WARNINGS. FORD SAYS
17        I NEED TO REPLACE CVT TRANSMISSION TO FIX. *TR

18  (g)   OUR 2007 FORD FREESTYLE (70124) BEGAN MAKING A
19        NOISE IN PARK AND NEUTRAL. TOOK IT TO
20        DEALERSHIP AND WAS TOLD THE CVT
21        TRANSMISSION NEEDED TO BE REPLACED AT A COST
22        OF $4384 WITH LABOR AND FLUSH $5618.87 TO
23        REPAIR. AFTER READING OTHER ACCOUNTS HERE I
24        ALSO RECOGNIZE THE LURCHING FORWARD. TRIED
25        TO TRADE VEHICLE BUT COST OF REPAIR TAKES
26        AWAY TRADE IN VALUE. WE WILL WAIT FOR A PUSH
27        PULL AND DRAG SALE AND TRY TO GET AT LEAST
28        ENOUGH FOR IT TO GET ANOTHER VEHICLE. WAS

DYKEMA GOSSETT LLP
2723 SOUTH STATE STREET
SUITE 400
ANN ARBOR, MI 48104

1   TOLD THAT THE NEW REPLACEMENT TRANSMISSION

2   CARRIES A 100,000 MILE WARRANTY. WHY DID THE

3   CURRENT TRANSMISSION HAVE ONLY 60,000 MILE

4   WARRANTY. WE WERE TOLD FORD IS THE ONLY

5   PLACE TO GET THE NEW TRANSMISSION. WIN WIN

6   SITUATION FOR FORD AT CUSTOMER EXPENSE. ONE

7   SOLUTION FOR FORD TO CONSIDER IF THEY CANNOT

8   DO A RECALL IS TO REFINANCE VEHICLES FOR

9   TRANSMISSION REPAIR AT COST. THEY SHOULD NOT

10  JUST ABANDON THEIR CUSTOMERS. *TR

11  (h)   A 2007 FORD FREESTYLE TRANSMISSION FAILURE. IT

12  WAS ONLY A FEW THOUSAND MILES OUT OF

13  WARRANTY AND BARELY 3 YEARS OLD. THIS IS A

14  TRANSMISSION ISSUE WITH THE CVT TRANSMISSION

15  THAT EVERYONE IN THE INDUSTRY SEEMS TO BE

16  FULLY AWARE OF AND FORD REFUSES TO STAND

17  BEHIND THEIR PRODUCT. HOWEVER, FORD IS HAPPY

18  TO CHARGE ME $5000 TO HAVE IT FIXED BY THEM. I

19  AM VERY DISAPPOINTED IN THEIR LACK OF

20  INTEGRITY OF STANDING BEHIND THEIR PRODUCT.

21  *TR

22  (i)   MY 2005 MERCURY MONTEGO WITH JUST OVER 18,

23  000 MILES SUDDENLY WENT DEAD, WHILE

24  PARTIALLY PULLED OUT IN TRAFFIC. IT WAS

25  TRACED TO THE CVT TRANSMISSION. NO HARM

26  OCCURRED, BUT I AM GOING TO GET RID OF THE

27  CAR. I ALSO NOTICED INFO ON THE INTERNET WITH

28  CVT PROBLEMS. I SEE TOO THAT FORD PULLED OUT

THE CVT TRANSMISSIONS ON ITS NEW MODELS FOR THE SABLE (WHICH WAS THE MONTEGO) AND TAURUS. I HAD TO PAY JUST OVER $1900 ON THIS REPAIR-¬WHICH I DO NOT BELIEVE IS FAIR, AS IT APPEARS TO BE A DEFECT WITH THE CVT. *TR

(j)   2006 MERCURY MONTEGO NEEDS A NEW TRANSMISSION. IT IS A CVT TRANSMISSION. DEALER STATED THAT NOW THEY KNOW THEY HAVE PROBLEMS BUT THAT THEY DIDN'T KNOW WHEN THEY FIRST STARTED TO SELL THEM.

(k)   TRANSMISSION ON 2006 MERCURY MONTEGO PREMIER AWD/ CVT TRANSMISSION WENT OUT WITH ONLY 78429 MILES ON IT. *TR

(l)   2007 MERCURY MONTEGO: FIRST AT 56K MILES WHEN PUTTING THE CAR INTO REVERSE IT WOULDN'T GO INTO GEAR, UNDER WARRANTY FORD CHANGED THE FLUID SAID NOTHING ELSE WAS WRONG, GOT CAR BACK AND IT STILL DID SAME THING, TOOK BACK TO FORD NOTHING WRONG BUT CAR CONTINUED TO HAVE SAME PROBLEM AND A THE MOTOR NOISE GOT LOUDER. THEN AT 112K CAR WOULDN'T GO INTO GEAR, HIGH SPEED WAS 10MPH. IT WAS THE CVT TRANSMISSION. CALLED NUMEROUS TRANSMISSION GARAGES NO ONE WORKS ON THEM. FOUND ONE THAT WOULD LOOK AT IT, THEY CONFIRMED IT WAS THE TRANSMISSION, FORD WOULD NOT RELEASE ANY PARTS FOR REBUILDING IT. THEN FORD WOULD NOT RELEASE A

DYKEMA GOSSETT LLP
2723 SOUTH STATE STREET
SUITE 400
ANN ARBOR, MI 48104

FORD MOTOR COMPANY'S RESPONSE TO FIRST AMENDED CLASS ACTION COMPLAINT
CASE NO. 2:12-CV-09026-ABC (JCGx)

DYKEMA GOSSETT LLP
2723 SOUTH STATE STREET
SUITE 400
ANN ARBOR, MI 48104

1  REFURBISHED TRANSMISSION FOR IT, THEN THEY

2  CLAIMED THE GARAGES JUST HAD A MISS

3  COMMUNICATIONS. CALLED FORD CUSTOMER

4  SERVICE, THEY SAID CALL BACK IN 48 HRS HAD TO

5  CALL THEM BACK A WK N HALF LATER, JUST TO BE

6  TOLD BY KIM THE SUPERVISOR THAT SHE HOPES I

7  HAVE A NICE DAY. ENDED UP PAYING $6800. TO

8  HAVE MY TRANSMISSION REPLACED WITH A

9  REFURBISHED ONE FROM TENN. HAD TO PAY XTRA

10  SHIPPING. FORD QUIT MAKING THE CVT BECAUSE

11  THEY KNOW THE PROBLEMS THAT IT HAS AND IS

12  NOT STANDING BEHIND THEIR ERROR.

13  **Internet Postings:**

14  (a)  Another CVT problem with the 2005 Freestyle transmission. The car

15  blew a 7" hole in the transmission on the Interstate out of Colorado

16  Springs. It was a wonder that we were not killed in the traffic as the car

17  stalled and began to smoke. Quotes to fix the problem from nearby

18  dealerships were in the neighborhood of $5000 to $5500. We called the

19  Ford main customer service #1-800-392-3673 to no avail. . . . (Accessed

20  online, July 24, 2012, available at http://townhall-

21  talk.edmunds.com/direct/view/.f0da870/299).

22  (b)  We are also having issues with our 2005 Freestyle "CVT" transmission.

23  Made sevaral calls and visits to Ford, They say theres nothing they can

24  do for us, we have tried getting the trans fixed, but most parts are hard to

25  find and very expensive, Why would Ford make this kind of trans, then

26  not have the parts to fix it? And why are their parts so expensive ? Im

27  VERY disappointed with Ford, and will never purchase another car from

28  them ! Now what are we suppose to do with the Freestyle that sits in our

garage, the body and inside are in perfect shape, hate to have to junk the car. With the economy the way it is, we all cant just go out and buy new cars. i believe that Ford needs to recall the freestyles and fix them! (Accessed online, July 24, 2012, available at http://townhall-talk.edmunds.com/direct/view/.f0da870/347).

(c)    Here's my experience. I have a 2006 Freestyle. In October 2009 at 55,000 miles I had to have the transmission replaced (thank goodness I had the extended warrenty. Then again in August 2011 at 83,000 miles I had to have it replaced again     again it was under warrenty. It has a 3 year warrenty on the current transmission. If it wasn't for we still owe on the car I'd be getting rid of it. I can't believe I've had to have the transmission replaced TWICE and the car is only 5 years old!!! Anyway, my suggestion     new car! This one is not worth the headache! (Accessed online, July 24, 2012, available at http ://townhal 1-talk. edmunds. corn/direct/view/. f0d8ce7).

(d)    I purchased my 2007 freestyle in April 2088 with just over 10,000 miles. The transmission went in 2009, not sure of mileage and had to be repaired. This month at approximately 48,000 miles it went again. Service decided to would be more cost effective to replace with a refurbished transmission. The car is only 3 yrs old! The refurbished transmission (not new) only has a limited warranty and was told by service that if it goes again after warranty, it could cost 3000 to 5000 dollars to fix. I believe Ford new about the problems with the transmission on these cars and purposely failed to tell of potential transmission problems. (Accessed online, July 24, 2012, available at http://www.edmunds.com/ford/freestyle/2007/consumer-reviews.html?style---100742888).

DYKEMA GOSSETT LLP
2723 SOUTH STATE STREET
SUITE 400
ANN ARBOR, MI 48104

1    **Response:**  Ford denies that the CVT installed in the 2005-2007 Ford

2   Freestyle and 2005-2007 Mercury Montego vehicles is defective.  Ford is without

3   knowledge or information sufficient to form a belief as to the truth of the remaining

4   allegations in this paragraph and therefore denies the allegations.

5        53.    The CVT Transmission Defect poses an unreasonable safety risk for

6   Class Members, as well as the drivers, passengers, and pedestrians sharing the road

7   with Class Vehicles. A vehicle's ability to maintain forward propulsion, to accelerate,

8   and the ability of a vehicle's transmission to perform properly are each critical to the

9   safe operation of a motor vehicle. A defect that causes one or more of these negative

10  characteristics clearly poses a safety hazard to the general public, and increases the

11  risk of automobile accidents.

12       **Response:**   Ford denies the allegations in this paragraph.

13  **B.    Defendant Has Exclusive Knowledge Of The CVT Transmission Defect**

14       54.    Defendant has superior and exclusive knowledge of the CVT

15  Transmission Defect, and knew or should have known that the defect was not known

16  or reasonably discoverable by Plaintiffs and Class Members prior to their purchase or

17  lease of the Class Vehicles.

18       **Response:**   Ford admits only that it has substantial knowledge of the CVT

19  Transmission installed on the Subject Vehicles.    Ford denies that the CVT

20  Transmission is defective and denies the remaining allegations in this paragraph.

21       55.    Plaintiffs are informed and believe and based thereon allege that before

22  Plaintiffs purchased his vehicle, and since 2005, if not before, Ford knew about the

23  transmission defect through sources not available to consumers, including pre-release

24  testing data, early consumer complaints about the transmission defects to Ford and its

25  dealers, testing conducted in response to those complaints, high failure rates and

26  replacement part sales data, aggregate data from Ford dealers, among other internal

27  sources of aggregate information about the problem.

28       **Response:**   Ford denies the allegations in this paragraph.

DYKEMA GOSSETT LLP
2723 SOUTH STATE STREET
SUITE 400
ANN ARBOR, MI 48104

25

1   56.   In June 2006 and January 2007, Defendant issued one or more technical
2   service bulletins ("TSB") to only its dealers acknowledging the CVT Transmission
3   Defect for Class Vehicles. In these TSBs, Defendant implemented a variety of
4   cheaper, albeit temporary, fixes instead of replacing the defective CVT
5   Transmissions.

6   **Response:** Ford denies the existence of a "Defect" and denies that it had
7   knowledge of the "Transmission Defect" as that term is defined by Plaintiff in the
8   Complaint. Ford admits only that it published a Technical Service Bulletin related to
9   the transmission in the 2005-2007 Ford Freestyle and 2005-2007 Mercury Montego
10  vehicles and that this TSB speaks for itself. To the extent the allegations in this
11  paragraph differ from this TSB, Ford denies the allegations. Answering further, Ford
12  denies the remaining allegations in this paragraph.

13  57.   The existence of the CVT Transmission Defect is a fact that would be
14  considered material by a reasonable consumer deciding whether to purchase or lease
15  a vehicle that was equipped with a CVT Transmission. Had Plaintiffs and other Class
16  Members known that the Class Vehicles were equipped with defective CVT
17  Transmissions, they would not have purchased the Class Vehicles equipped with the
18  CVT Transmissions or would have paid less for them.

19  **Response:** Ford denies the existence of a "Transmission Defect" and is
20  without knowledge or information sufficient to form a belief as to the truth of the
21  allegations in this paragraph and therefore denies the allegations.

22  58.   Reasonable consumers, like Plaintiffs, expect and assume that a vehicle's
23  transmission is safe, will function in a manner that will not pose a safety hazard, and
24  is free from defects. Plaintiffs and Class Members further expect and assume that
25  Defendant will not sell or lease vehicles with known safety defects, such as the CVT
26  Transmission Defect, and will disclose any such defects to its consumers when it
27  learns of them. They do not expect Ford to fail to disclose the CVT Transmission
28

DYKEMA GOSSETT LLP
2723 SOUTH STATE STREET
SUITE 400
ANN ARBOR, MI 48104

DYKEMA GOSSETT LLP
2723 SOUTH STATE STREET
SUITE 400
ANN ARBOR, MI 48104

Defect to them, to continually deny the defect, and to charge them thousands of dollars to repair defective CVT Transmissions.

**Response:** Ford denies the existence of a "Transmission Defect" and is without knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph and therefore denies the allegations.

**C.     Ford Has Actively Concealed The CVT Transmission Defect**

59.     While defendant has been fully aware of the CVT Transmission Defect in the Class Vehicles, it has actively concealed the existence and nature of the defect from Plaintiffs and Class Members at the time of purchase, lease or repair and thereafter. Specifically, defendant has failed to disclose or actively concealed at and after the time of purchase, lease, or repair:

(a)     any and all known material defects or material nonconformity of the Class Vehicles, including the defects relating to the CVT Transmissions;

(b)     that the Class Vehicles, including their CVT Transmissions, were not in good in working order, were defective, and were not fit for their intended purposes; and

(c)     that the Class Vehicles and their CVT Transmissions were defective, despite the fact that they learned of such defects through customer complaints, as well as through other internal sources, as early as 2005.

**Response:**   Ford denies the allegations in this paragraph.

60.     Defendant has caused Plaintiffs and Members of the Class to expend money at its dealerships to repair or replace the Class Vehicles' CVT Transmission, despite Defendant's knowledge of the defect.

**Response:**   Ford denies the existence of "Class Members" because no class has been certified and the putative class members are not parties to this litigation. Answering further, Ford denies the allegations in this paragraph.

61.     When consumers present the Class Vehicles to an authorized Ford dealer for repair of the CVT Transmission, consumers are typically told that they must pay

1    for the repair. The cost of repairing the CVT Transmission Defect can range from

2    approximately two (2) to five (5) thousand dollars.

3         **Response:** Ford is without knowledge or information sufficient to form a

4    belief as to the truth of the allegations in this paragraph and therefore denies the

5    allegations.

6         62.    To this day, defendant still has not notified Plaintiffs and the Class

7    Members that the Class Vehicles suffer from a systemic defect that causes the CVT

8    Transmission to malfunction.

9         **Response:** Ford denies the existence of "Class Members" because no class

10    has been certified and the putative class members are not parties to this litigation.

11    Ford further denies the existence of a "systemic defect that causes the CVT

12    Transmission to malfunction."

13         63.    Defendant has caused Plaintiffs and Class Members to expend money at

14    its dealerships to diagnose, repair or replace the Class Vehicles' CVT Transmissions,

15    despite Defendant's knowledge of the CVT Transmission Defect.

16         **Response:** Ford denies the existence of "Class Members" because no class

17    has been certified and the putative class members are not parties to this litigation.

18    Ford further denies the existence of a "Transmission Defect" and denies the

19    remaining allegations in this paragraph.

20                   **CLASS ACTION ALLEGATIONS**

21         64.    Plaintiffs bring this lawsuit as a class action on behalf of themselves and

22    all others similarly situated as members of the proposed Class pursuant to Federal

23    Rules of Civil Procedure 23(a) and (b)(3) and/or (b)(2). This action satisfies the

24    numerosity, commonality, typicality, adequacy, predominance, and superiority

25    requirements of those provisions.

26         **Response:** Ford admits that Plaintiff purports to bring this action on behalf of

27    the proposed class and sub-classes, but denies that certification of any class or sub-

28    class is appropriate.

DYKEMA GOSSETT LLP
2723 SOUTH STATE STREET
SUITE 400
ANN ARBOR, MI 48104

65. All claims alleged herein arise under California law for which Plaintiffs seeks relief authorized by California law.

Class: All purchasers and lessees of any 2005 through 2007 Ford Freestyle or 2005 through 2007 Mercury Montego vehicle who reside in the United States (the "Nationwide Class").

**Response:** Ford admits that Plaintiffs seek relief under California law and that Plaintiffs purport to bring this action on behalf of the proposed class and sub-classes, but denies that certification of any class or sub-class is appropriate.

66. Plaintiffs propose the following Sub-Classes (collectively, the "Statewide Sub-Classes" or the "Sub-Classes"):

California Sub-Class: All members of the Nationwide Class who reside in the state of California (the "California Sub-Class").

**Response:** Ford denies that certification of any sub-class is appropriate.

67. Excluded from the Nationwide Class and the Sub-Classes are Defendant, its affiliates, employees, officers and directors, persons or entities that purchased the Class Vehicles for resale, and the Judge(s) assigned to this case. Claims for personal injury are specifically excluded from the Class. Plaintiffs reserve the right to modify the Nationwide Class and Sub-Class definitions if discovery and/or further investigation reveal that they should be expanded or otherwise modified.

**Response:** Ford is without knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph and therefore denies the allegations.

68. Numerosity: Although the exact number of Class Members is uncertain and can only be ascertained through appropriate discovery, the number is great enough such that joinder is impracticable. The disposition of the claims of these Class Members in a single action will provide substantial benefits to all parties and to the Court. The Class Members are readily identifiable from information and records in

DYKEMA GOSSETT LLP
2723 SOUTH STATE STREET
SUITE 400
ANN ARBOR, MI 48104

1   Defendant's possession, custody or control, as well as from records kept by the
2   Departments of Motor Vehicles of various states.

3       **Response:**   Ford denies the allegations in this paragraph.

4       69.   <u>Typicality</u>: The claims of the representative Plaintiffs are typical of the
5   claims of the Class in that the representative Plaintiffs, like all Class Members,
6   purchased and leased a Class Vehicle designed, manufactured, and distributed by
7   Ford in which the CVT was defective. The representative Plaintiffs, like all Class
8   Members, has been damaged by Defendant's misconduct in that he has incurred or
9   will incur the cost of repairing or replacing parts related to the CVT defect.
10  Furthermore, the factual bases of Ford's misconduct are common to all Class
11  Members and represent a common thread of fraudulent, deliberate, and negligent
12  misconduct resulting in injury to all Class Members.

13      **Response:**   Ford denies the allegations in this paragraph.

14      70.   <u>Commonality</u>: There are numerous questions of law and fact common to
15  Plaintiffs and the Class that predominate over any question affecting only individual
16  Class Members. These common legal and factual issues include the following:

17      (a)   Whether Class Vehicles suffer from defects relating to the CVT
18            Transmission;

19      (b)   Whether the defects relating to the CVT Transmission constitute an
20            unreasonable safety risk;

21      (c)   Whether Defendant knows about the defects relating to the CVT
22            Transmission and, if so, how long Defendant has known of the defect;

23      (d)   Whether the defective nature of the CVT Transmission constitutes a
24            material fact;

25      (e)   Whether Defendant has a duty to disclose the defective nature of the
26            CVT Transmission to Plaintiffs and Class Members;

27

28

DYKEMA GOSSETT LLP
2723 SOUTH STATE STREET
SUITE 400
ANN ARBOR, MI 48104

FORD MOTOR COMPANY'S RESPONSE TO FIRST AMENDED CLASS ACTION COMPLAINT
CASE NO. 2:12-CV-09026-ABC (JCGx)

DYKEMA GOSSETT LLP
2723 SOUTH STATE STREET
SUITE 400
ANN ARBOR, MI 48104

(f)      Whether Plaintiffs and the other Class Members are entitled to equitable relief, including but not limited to a preliminary and/or permanent injunction;

(g)      Whether Defendant knew or reasonably should have known of the defects relating to the CVT Transmission before it sold and leased Class Vehicles to Class Members;

(h)      Whether Defendant should be declared financially responsible for notifying all Class Members of the problems with the Class Vehicles and for the costs and expenses of repairing and replacing the defective CVT Transmissions;

(i)      Whether Defendant is obligated to inform Class Members of their right to seek reimbursement for having paid to diagnose, repair, or replace their defective CVT Transmissions.

**Response:**   Ford denies the allegations in this paragraph.

71.    <u>Adequate Representation</u>: Plaintiffs will fairly and adequately protect the interests of the Class Members. Plaintiffs has retained attorneys experienced in the prosecution of class actions, including consumer and product defect class actions, and Plaintiffs intend to prosecute this action vigorously.

**Response:**   Ford is without knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph and therefore denies the allegations.

72.    <u>Predominance and Superiority</u>: Plaintiffs and the Class Members have all suffered and will continue to suffer harm and damages as a result of Defendants' unlawful and wrongful conduct. A class action is superior to other available methods for the fair and efficient adjudication of the controversy. Absent a class action, most Class Members would likely find the cost of litigating their claims prohibitively high and would therefore have no effective remedy at law. Because of the relatively small size of the individual Class Members' claims, it is likely that only a few Class

1  Members could afford to seek legal redress for Defendants' misconduct. Absent a
2  class action, Class Members will continue to incur damages, and Defendants'
3  misconduct will continue without remedy. Class treatment of common questions of
4  law and fact would also be a superior method to multiple individual actions or
5  piecemeal litigation in that class treatment will conserve the resources of the courts
6  and the litigants, and will promote consistency and efficiency of adjudication.

7      **Response:**   Ford denies the allegations in this paragraph.

8      73.   In the alternative, the Class may be certified because:

9      (a)   the prosecution of separate actions by the individual members of the
10           Class would create a risk of inconsistent or varying adjudication with
11           respect to individual Class Members, which would establish
12           incompatible standards of conduct for Toyota;

13     (b)   the prosecution of separate actions by individual Class Members would
14           create a risk of adjudications with respect to them that would, as a
15           practical matter, be dispositive of the interests of other Class Members
16           not parties to the adjudications, or substantially impair or impede their
17           ability to protect their interests; and

18     (c)   Toyota [Ford] has acted or refused to act on grounds generally
19           applicable to the Class, thereby making appropriate final and injunctive
20           relief with respect to the members of the Class as a whole.

21     **Response:**   Ford denies the allegations in this paragraph.

22                    **FIRST CAUSE OF ACTION**

23          **(Violation of California's Consumers Legal Remedies Act,**

24              **California Civil Code section 1750 et seq.)**

25     74.   Plaintiffs hereby incorporate by reference the allegations contained in
26  the preceding paragraphs of this Complaint.

27     **Response:**   In response to the allegations in this paragraph, Ford incorporates
28  its responses to paragraphs 1-73.

DYKEMA GOSSETT LLP
2723 SOUTH STATE STREET
SUITE 400
ANN ARBOR, MI 48104

75.    Plaintiffs bring this cause of action on behalf of themselves and on behalf of the members of the Nationwide Class, or, in the alternative, on behalf of the members of the California Sub-Class.

**Response:**   Ford admits that Plaintiffs purport to bring this action on behalf of the proposed class and sub-classes, but denies that certification of any class or sub-class is appropriate.

76.    Defendant is a "person" as defined by California Civil Code § 1761(c).

**Response:**   This paragraph states a legal conclusion to which no response is required.   To the extent a response is required, Ford is without knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph and therefore denies the allegations.

77.    Plaintiffs and Class Members are "consumers" within the meaning of California Civil Code § 1761(d).

**Response:**   This paragraph states a legal conclusion to which no response is required.   To the extent a response is required, Ford is without knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph and therefore denies the allegations.

78.    By failing to disclose and concealing the defective nature of the CVT Defect from Plaintiffs and prospective Class Members, Defendant has violated California Civil Code § 1770(a), as it represented that its Class Vehicles and their CVTs had characteristics and benefits that they do not have, and represented that its Class Vehicles and their CVTs were of a particular standard, quality, or grade when they were of another. See Cal. Civ. Code §§ 1770(a)(5) & (7).

**Response:**   Ford denies the allegations in this paragraph.

79.    Defendant's unfair and deceptive acts or practices occurred repeatedly in Defendant's trade or business, were capable of deceiving a substantial portion of the purchasing public, and imposed a serious safety risk on the public.

**Response:**   Ford denies the allegations in this paragraph.

DYKEMA GOSSETT LLP
2723 SOUTH STATE STREET
SUITE 400
ANN ARBOR, MI 48104

80. Defendant knew that it's Class Vehicles and their CVTs suffered from an inherent defect, were defectively designed or manufactured, would fail prematurely, and were not suitable for their intended use.

**Response:** Ford denies the allegations in this paragraph.

81. Defendant was under a duty to Plaintiffs and the Class Members to disclose the defective nature of the CVT of the Class Vehicles and/or the associated repair costs because:

(a) Defendant was in a superior position to know the true state of facts about the safety defects contained in the Class Vehicles and their headlights;

(b) Plaintiffs and the Class Members could not reasonably have been expected to learn or discover that their headlights have a dangerous safety defect; and

(c) Defendant knew that Plaintiffs and the Class Members could not reasonably have been expected to learn or discover the safety defect.

**Response:** This paragraph states legal conclusions to which no response is required. To the extent a response is required, Ford is denies all allegations in this paragraph.

82. In failing to disclose the CVT Transmission Defect, Defendant has knowingly and intentionally concealed material facts and breached its duty not to do so.

**Response:** Ford denies the allegations in this paragraph.

83. The facts concealed or not disclosed by Defendant to Plaintiffs and the Class Members are material in that a reasonable consumer would have considered them to be important in deciding whether or not to purchase the Class Vehicles, or to pay less for them. Had Plaintiffs and other Class Members known that the Class Vehicles and their CVTs were defective, they would not have purchased the Class Vehicles or would have paid less for them.

**Response:** Ford denies the allegations in this paragraph.

DYKEMA GOSSETT LLP
2723 SOUTH STATE STREET
SUITE 400
ANN ARBOR, MI 48104

DYKEMA GOSSETT LLP
2723 SOUTH STATE STREET
SUITE 400
ANN ARBOR, MI 48104

84.     Reasonable consumers, like Plaintiffs and the Class Members, expect and assume that a vehicle's transmission is safe, will function in a manner that will not pose a safety hazard, and is free from defects. Plaintiffs and Class Members further expect and assume that Defendant will not sell or lease vehicles with known safety defects, such as the CVT Transmission Defect, and will disclose any such defects to its consumers when it learns of them. They do not expect Defendant to fail to disclose the CVT Transmission Defect to them, to continually deny the defect, and to charge them thousands of dollars to repair defective CVT Transmissions.

**Response:**   Ford denies that the CVT is defective and denies the remaining allegations in this paragraph.

85.     As a result of Defendant's conduct, Plaintiffs and Class Members have been harmed and have suffered actual damages in that the Class Vehicles and their CVTs are defective and are continuously failing and will continue to fail before their expected useful life has run.

**Response:**   Ford denies the remaining allegations in this paragraph.

86.     As a direct and proximate result of Defendant's unfair or deceptive acts or practices, Plaintiffs and Class Members have suffered and will continue to suffer actual damages.

**Response:**   Ford denies the remaining allegations in this paragraph.

87.     Plaintiffs and the Class are entitled to equitable relief.

**Response:**   This paragraph states a legal conclusion to which no response is required.   To the extent a response is required, Ford denies the allegation in this paragraph.

88.     Plaintiff Rasico provided Defendant with notice of its alleged violations of the CLRA pursuant to Civil Code section 1782(a). Defendant failed to provide appropriate relief for its violation of the CLRA within 30 days of the date of the notification letter. As a result, this Complaint is amended to have Plaintiffs seek

1 monetary and compensatory damages, in addition to injunctive and equitable relief

2 they sought before.

3     **Response:** This paragraph states a legal conclusion to which no response is

4 required. To the extent a response is required, Ford admits only that, on behalf of

5 Plaintiff Rasico, Mark Yablonovich sent Ford a letter dated September 5, 2012,

6 which stated that Ford violated the CLRA. Ford also admits that it did not provide

7 the relief requested in the letter. Ford is without knowledge or information sufficient

8 to form a belief as to the truth of the remaining allegations in this paragraph and

9 therefore denies the allegations.

10                          **SECOND CAUSE OF ACTION**

11       *(Violation of California Business & Professions Code §§ 17200, et seq.)*

12     89.   Plaintiffs hereby incorporate by reference the allegations contained in

13 the preceding paragraphs of this Complaint.

14     **Response:** In response to the allegations in this paragraph, Ford incorporates

15 its responses to paragraphs 1-88.

16     90.   Plaintiffs bring this cause of action on behalf of themselves and on

17 behalf of the Nationwide Class, or, in the alternative, on behalf of the California Sub-

18 Class.

19     **Response:** Ford admits that Plaintiffs purport to bring this action on behalf of

20 the proposed class and sub-classes, but denies that certification of any class or sub-

21 class is appropriate.

22     91.   California Business & Professions Code § 17200 prohibits acts of

23 "unfair competition," including any "unlawful, unfair or fraudulent business act or

24 practice" and "unfair, deceptive, untrue or misleading advertising."

25     **Response:** This paragraph states a legal conclusion to which no response is

26 required. To the extent a response is required, Ford admits that this paragraph

27 accurately paraphrases excerpts from the Unfair Competition Law, Cal. Bus. and

28 Prof. Code § 17200.

DYKEMA GOSSETT LLP
2723 SOUTH STATE STREET
SUITE 400
ANN ARBOR, MI 48104

FORD MOTOR COMPANY'S RESPONSE TO FIRST AMENDED CLASS ACTION COMPLAINT
CASE NO. 2:12-CV-09026-ABC (JCGx)

92.   Defendant knew that the Class Vehicles and their CVTs suffered from an inherent defect that caused loss of forward propulsion, significant delays in acceleration, loud noises coming from the CVT Transmission, and total transmission failure during operation. Defendant knew that the Class Vehicles and their CVTs were defectively designed or manufactured and were not suitable for their intended use.

**Response:**   Ford denies that the CVT is defective and denies the remaining allegations in this paragraph.

93.   In failing to disclose the CVT Defect, Defendant has knowingly and intentionally concealed material facts and breached its duty not to do so.

**Response:**   This paragraph states a legal conclusion to which no response is required.   To the extent a response is required, Ford denies the allegation in this paragraph.

94.   Defendant was under a duty to Plaintiffs and the Class Members to disclose the defective nature of the Class Vehicles and their defective CVTs because:

(a)   Defendant was in a superior position to know the true state of facts about the safety defect in the Class Vehicles and their CVTs;

(b)   Defendant made partial disclosures about the quality of the Class Vehicles without revealing the defective nature of the Class Vehicles and their CVTs; and

(c)   Defendant actively concealed the defective nature of the Class Vehicles and their CVTs from Plaintiffs and Class Members.

**Response:**   This paragraph states legal conclusions to which no response is required.   To the extent a response is required, Ford denies the allegations in this paragraph.

95.   The facts concealed or not disclosed by Defendant to Plaintiffs and the Class Members are material in that a reasonable person would have considered them to be important in deciding whether or not to purchase Defendant's Class Vehicles, or

DYKEMA GOSSETT LLP
2723 SOUTH STATE STREET
SUITE 400
ANN ARBOR, MI 48104

1   to pay less for them. Had Plaintiffs and other Class Members known that the Class
2   Vehicles suffered from the CVT Defect described herein, they would not have
3   purchased the Class Vehicles or would have paid less for them.

4       **Response:**   Ford denies the allegations in this paragraph.

5       96.   Defendant continued to conceal the defective nature of the Class
6   Vehicles and their CVTs even after Class Members began to report problems. Indeed,
7   Defendant continues to cover up and conceal the true nature of the problem.

8       **Response:**   Ford denies the allegations in this paragraph.

9       97.   By its conduct, Defendant has engaged in unfair competition and
10  unlawful, unfair, and fraudulent business practices.

11      **Response:**   This paragraph states a legal conclusion to which no response is
12  required.   To the extent a response is required; Ford denies the allegation in this
13  paragraph.

14      98.   Defendant's unfair or deceptive acts or practices occurred repeatedly in
15  Defendant's trade or business, and were capable of deceiving a substantial portion of
16  the purchasing public.

17      **Response:**   This paragraph states a legal conclusion to which no response is
18  required.   To the extent a response is required, Ford denies the allegation in this
19  paragraph.

20      99.   As a direct and proximate result of Defendant's unfair and deceptive
21  practices, Plaintiffs and the Class have suffered and will continue to suffer actual
22  damages.

23      **Response:**   This paragraph states a legal conclusion to which no response is
24  required.   To the extent a response is required, Ford denies the allegation in this
25  paragraph.

26      100.   Defendant has been unjustly enriched and should be required to make
27  restitution to Plaintiffs and the Class pursuant to §§ 17203 and 17204 of the Business
28  & Professions Code.

DYKEMA GOSSETT LLP
2723 SOUTH STATE STREET
SUITE 400
ANN ARBOR, MI 48104

1   **Response:**  This paragraph states a legal conclusion to which no response is
2   required.   To the extent a response is required, Ford denies the allegation in this
3   paragraph.

## RELIEF REQUESTED

5   101.  Plaintiffs, on behalf of themselves and all others similarly situated,
6   request the Court to enter judgment against Defendant, as follows:

7   (a)   An order certifying the proposed Class and Sub-Classes, designating
8         Plaintiffs as named representatives of the Class, and designating the
9         undersigned as Class Counsel;

10  (b)   A declaration that Defendant is financially responsible for notifying all
11        Class Members about the defective nature of the CVTs;

12  (c)   An order enjoining Defendant from further deceptive distribution, sales,
13        and lease practices with respect to Class Vehicles, and to remove and
14        replace Plaintiffs' and Class Members' CVTs with a suitable alternative
15        product;

16  (d)   An award to Plaintiffs and the Class for compensatory, exemplary, and
17        statutory damages, including interest, in an amount to be proven at trial;

18  (e)   A declaration that Defendant must disgorge, for the benefit of the Class,
19        all or part of the ill-gotten profits it received from the sale or lease of its
20        Class Vehicles, or make full restitution to Plaintiffs and Class Members;

21  (f)   An award of attorneys' fees and costs, as allowed by law;

22  (g)   An award of attorneys' fees and costs pursuant to California Code of
23        Civil Procedure § 1021.5;

24  (h)   An award of pre-judgment and post-judgment interest, as provided by
25        law;

26  (i)   Leave to amend the Complaint to conform to the evidence produced at
27        trial; and

28  (j)   Such other relief as may be appropriate under the circumstances.

DYKEMA GOSSETT LLP
2723 SOUTH STATE STREET
SUITE 400
ANN ARBOR, MI 48104

DYKEMA GOSSETT LLP
2723 SOUTH STATE STREET
SUITE 400
ANN ARBOR, MI 48104

**Response:** Ford denies the allegations in this paragraph and denies that Plaintiffs are entitled to any relief.

## DEMAND FOR JURY TRIAL

102.   Plaintiffs hereby demand a trial by jury.

Ford admits and acknowledges that Plaintiffs demand a trial by jury.

## AFFIRMATIVE AND ADDITIONAL DEFENSES

## FIRST AFFIRMATIVE DEFENSE

1.     The claims of Plaintiffs and the putative class are barred for failure to state a claim on which relief can be granted.  Plaintiffs do not identify any statement or omission regarding the transmission in the 2005 through 2007 Ford Freestyle or 2005 through 2007 Mercury Montego vehicles that any member of the putative class relied upon in deciding to buy or lease the vehicle, fails to identify any false statement whatsoever regarding the performance or capabilities of the 2005 through 2007 Ford Freestyle, 2005 through 2007 Mercury Montego vehicles or other putative class vehicles, and fails to identify any safety or performance defect in the 2005 through 2007 Ford Freestyle, 2005 through 2007 Mercury Montego vehicles or other putative class vehicles.  Plaintiffs do not allege that they were deprived of the benefit of the bargain, or otherwise set forth specific, plausible facts that would entitle Plaintiffs or the alleged class to any relief whatsoever.

## SECOND AFFIRMATIVE DEFENSE

2.     The transmissions of the subject vehicles have been damaged as a result of the negligence, fault, carelessness, misuse, or abuse of Plaintiffs and the putative class, which was the sole, intervening, superseding, or contributing cause of their alleged damages.  Although the particular cause of damage must be determined on an individual basis with respect to every Plaintiff and putative class member, examples include, but are not limited to, misuse or abuse of the vehicle, damage caused by

1   accidents, improper or inadequate repairs, aftermarket modifications or alterations,

2   and/or use of aftermarket products.  Depending on the applicable state law, any

3   recovery by Plaintiffs or the putative class is barred in full, or is diminished in

4   proportion to the amount of negligence, fault, carelessness, misuse, or abuse

5   attributable to Plaintiffs or putative class member.

6                           **THIRD AFFIRMATIVE DEFENSE**

7            3.      As defined in the Complaint, the putative class includes individuals and

8   entities whose vehicle did not manifest the alleged defect during the time that they

9   owned or leased it.  These individuals and entities have not experienced any

10  cognizable injury and, therefore, lack standing to assert any claims.

11                          **FOURTH AFFIRMATIVE DEFENSE**

12           4.      Any Plaintiffs or putative class member who received a settlement or

13  payment from Ford as a result of the alleged defect, as well as those who did not

14  incur any out of pocket costs for repairs to the transmission of his or her vehicle

15  because such repairs were covered by Ford, are barred from any recovery by the

16  doctrine of accord and satisfaction.

17                           **FIFTH AFFIRMATIVE DEFENSE**

18           5.      The claims of Plaintiffs and the putative class are barred by the doctrine

19  of res judicata.  More specifically, any Plaintiff or putative class member who

20  previously brought a lawsuit on the basis of the alleged defect in the transmission of

21  his or her vehicle, and which resulted in a final judgment on the merits, is barred from

22  re-litigating his or her claims in this case.

23                           **SIXTH AFFIRMATIVE DEFENSE**

24           6.      All acts of Ford at the time of design, manufacture, or distribution of the

25  subject vehicles were in conformity with the state-of-the-art based upon the

26  mechanical, technical, and scientific knowledge existing at the relevant time, and

27  Ford complied with all industry and government standards.  Thus, the subject

28

DYKEMA GOSSETT LLP
2723 SOUTH STATE STREET
SUITE 400
ANN ARBOR, MI 48104

1 vehicles are not defectively designed or manufactured, and any recovery by Plaintiffs
2 or members of the putative class is barred.

3                    **SEVENTH AFFIRMATIVE DEFENSE**

4        7.      Plaintiffs and the putative class failed to notify Ford of any alleged
5 breach of warranty within a reasonable time as required by Section 2-607 of the
6 Uniform Commercial Code, as adopted and codified by the states, or equivalent
7 section of the applicable state's warranty laws.  Accordingly, the breach of warranty
8 claims of Plaintiffs and the putative class are barred.

9                     **EIGHTH AFFIRMATIVE DEFENSE**

10       8.      The claims of Plaintiffs and the putative class are barred by laches
11 because they inexcusably delayed pursuit of their claims and such delay has resulted
12 in prejudice to Ford.  More specifically, Plaintiffs and the putative class members
13 failed to file suit within a reasonable time after they had, or should have had,
14 knowledge of a basis for their claims.

15                     **NINTH AFFIRMATIVE DEFENSE**

16       9.      Information relating to the alleged defect has been in the public domain
17 for many years.

18                     **TENTH AFFIRMATIVE DEFENSE**

19       10.     Ford did not sell or lease any of the subject vehicles directly to Plaintiffs
20 or the putative class.  Thus, to the extent applicable under state law, the claims of
21 Plaintiffs and the putative class are barred by lack of privity.

22                   **ELEVENTH AFFIRMATIVE DEFENSE**

23       11.     Plaintiffs assert that the alleged defect has resulted only in damage to the
24 vehicles themselves.  Plaintiffs do not assert that the alleged defect has resulted in
25 damage to any other property, and they specifically disclaim any recovery for
26 personal injury damages.  Accordingly, the Plaintiffs' tort claims and those of the
27 putative class are barred by the economic loss rule, which precludes recovery in tort
28 where the only alleged damages are to the product itself.

DYKEMA GOSSETT LLP
2723 SOUTH STATE STREET
SUITE 400
ANN ARBOR, MI 48104

DYKEMA GOSSETT LLP
2723 SOUTH STATE STREET
SUITE 400
ANN ARBOR, MI 48104

### TWELFTH AFFIRMATIVE DEFENSE

12.    Prior to filing this lawsuit, Plaintiffs and members of the putative California sub-class failed to provide proper and adequate notice of their intention to commence an action under the California Consumer Legal Remedies Act ("CLRA") as required by Cal. Civ. Code § 1782.  Accordingly, their CLRA claims are barred.

### THIRTEENTH AFFIRMATIVE DEFENSE

13.    The Court lacks subject matter jurisdiction because Plaintiffs have failed to join all necessary parties and all of the vehicles in the purported class and subclasses were sold or leased to their initial purchaser with the New Vehicle Limited Warranty provided by Ford, which contains a dispute resolution provision.

### FOURTEENTH AFFIRMATIVE DEFENSE

14.    The transmissions of the subject vehicles have been damaged as a result of the negligence, fault, carelessness, misuse, or abuse of other persons or entities for whom Ford is not responsible.  Such negligence, fault, or carelessness was the sole, intervening, superseding, or contributing cause of the alleged damages of Plaintiffs and the putative class.  Although the particular cause of damage must be determined on an individual basis with respect to Plaintiffs and putative class member, examples include, but are not limited to, damage caused by persons or entities who struck, or caused another object to strike, the subject vehicles.  Additional examples include, but are not limited to, persons or entities who performed improper repairs, modifications, or alterations, as well as those who manufactured, sold, provided, or installed aftermarket products that were used on the subject vehicles.  Depending on the applicable state law, any recovery by Plaintiffs or the putative class is barred in full, or is diminished in proportion to the amount of negligence, fault, carelessness, misuse, or abuse attributable to other persons or entities.

### FIFTEENTH AFFIRMATIVE DEFENSE

15.    Plaintiffs' claims and claims of some members of the proposed class and subclasses are barred by the applicable statutes of limitation.

## SIXTEENTH AFFIRMATIVE DEFENSE

16.     All of the vehicles in the purported class and subclasses were sold or leased to their initial purchaser with the New Vehicle Limited Warranty provided by Ford that validly limited the duration of the implied warranty of merchantability to the period of the express warranty or to the applicable period provided by state law, whichever is less.  Accordingly the claims of Plaintiff or some members of the proposed class and subclasses are barred because they did not suffer a legally cognizable injury, damages, and/or loss within 3 years or 36,000 miles of the initial purchase or lease of the vehicle or shorter applicable state law period.

## SEVENTEENTH AFFIRMATIVE DEFENSE

17.     Plaintiffs or some members of the purported class and subclasses may not recover any incidental or consequential damages since such damages are expressly disclaimed within Ford's New Vehicle Limited Warranty.

18.     Ford reserves the right to assert additional affirmative and other defenses as may be established by the evidence in this case.

Dated:  April 18, 2013

DYKEMA GOSSETT LLP
John M. Thomas
Tamara A. Bush
David M. George


By:   /s/  Tamara A. Bush
John M. Thomas
Tamara A. Bush
Attorneys for Defendant
FORD MOTOR COMPANY

DYKEMA GOSSETT LLP
2723 SOUTH STATE STREET
SUITE 400
ANN ARBOR, MI 48104

## DEMAND FOR JURY TRIAL

Ford Motor Company hereby demands a trial by jury of all issues so triable.

Dated:  April 18, 2013

DYKEMA GOSSETT LLP
John M. Thomas
Tamara A. Bush
David M. George

By:   /s/  Tamara A. Bush
John M. Thomas
Tamara A. Bush
David M. George
Attorneys for Defendant
FORD MOTOR COMPANY

PAS01\689776.1
ID\TAHU - 087770\0119

DYKEMA GOSSETT LLP
2723 SOUTH STATE STREET
SUITE 400
ANN ARBOR, MI 48104